

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
OF NEW YORK

DeARCY HALL, J.
POLLAK, M.J.

Docket No.:

AVTAR S. BADWAL

     Plaintiff,

     -against-

CV 17 4310

COMPLAINT

RAMANDEEP BADWAL
JEFFREY S. BROWN in his official and personal
capacity

JURY TRIAL DEMANDED

     Defendant(s)

The Plaintiff, AVTAR BADWAL, (hereafter "Plaintiff"), as and for his Complaint against the Defendants, RAMANDEEP BADWAL and JEFFREY BROWN (hereafter "Defendant"), alleges as follows, upon information and belief:

NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief and damages, for actual, statutory damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. This is also under Title 42 U.S.C. Section 1983 et. Seq., and violation of Section 8 Article 1 of the New York State Constitution and under common law and policy of the State of New York.

FACTS

2. The factual history of this case is that my due process was violated and the State Court was bias and the decisions were prejudicial.

3. That upon information and belief there was a Prejudicial Order issued as a result of the Divorce proceedings.

4. That the Plaintiff's due process was violated without valid notice and hearing.

5.   The actions specified here amounts to violations of the United States Constitution and federal and local civil rights laws.   Plaintiffs seek a declaratory judgment, injunctive and equitable relief and compensatory damages and costs.

6. That this was a matrimonial action in the Supreme Court Mineola, Nassau County in the State of New York before Judge Jeffrey Brown. The Judge violated Plaintiff's civil rights because the Plaintiff filed a grievance and to which he believed the Judge took personal to deny me equal protection under the law. I believe that as a result of this, Judge Jeffrey Brown abused his Judicial office and instead of being an unbiased arbiter decided to descend into the arena and to dust himself and he made the fight between me and him and my ex-wife Ramandeep Badwal.

7.   That the on the issue of the equitable distribution and with regard to the property located at 110 – 30 62 Drive, Forest Hills, NY was sold for about $780,000.00 even though the property was worth more than $899,000 or even appraised more and plaintiff received nothing from the sale because my rights were trample by Judge Jeffrey Brown as a vendetta.

That upon this Judge Jeffrey Brown did not conduct proper hearing and gave the marital property located at 304 Brymawar Road, New Hyde Park, NY completely to Ramandeep Badwal and leaving me with no compensation.

8.   That Plaintiff pay for the School fees of Ramandeep Badwal who acquired Bachelor of Nursing degree during the marital period and because Judge Jeffrey Brown was biased, he failed to consider that I was entitled to that certificate and her pensions.

9.    That in addition the marital bank account was given to Ramandeep Badwal and I received nothing. The injustice here was so glaring that would shock any fair minded person. That upon all these I was left with marital debts. They fail to properly allocate money for the hotel sale. That Judge Jeffrey Brown did everything intentionally to deny me due process.

That I believe that proper records were not maintained in my case and that I was denied due

process.

JURISDICTION AND VENUE

10.   Jurisdiction is conferred on this Court by: 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States; 28 U.S.C. § 1343, which grants jurisdiction over cases brought under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 as an action raising a federal question; and pursuant to 28 U.S.C. § 1343(3).  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). Plaintiff seeks Declaratory Relief and Injunctive Relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure and injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

11.   Venue lies in the **Eastern District of New York** pursuant to 28 U.S.C. § 1391(b) (2) as the judicial district in which the events giving rise to this action occurred or where the Plaintiff resides. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c). Defendants all reside in this judicial district, the events or omissions giving rise to the claims herein occurred in this judicial district, and the property at issue is situated in this judicial district.

PARTIES

12. The Plaintiff, Avtar Badwal is a natural person and is a resident of the State of New York, County of Queens.

13. The Defendant, Ramandeep Badwal, is a natural person and the ex-wife of Plaintiff.

14.   Jeffery Brown is a judicial officer and a Defendant in this case..

FIRST CAUSE OF ACTION - (Violation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution)

15.   Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

16. Plaintiff brings this cause of action pursuant to 42 USC §1983 because

the Defendants, acting under color of State Law, violated Plaintiff's rights. Defendants' conduct as set forth above has deprived Plaintiff of his right to property without valid notice in violation of 42 U.S.C. § 1983 and the Due Process Clause of the United States Constitution.

17. Plaintiff has been injured by Defendants' unconstitutional conduct and has suffered damages as a result.

18. That by implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which litigants may have their due process rights violated.

19. That Plaintiff has been deprived and will continue to deprive Plaintiff of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States Constitution.

20. Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

SECOND CAUSE OF ACTION – (Violated Section 8 of Article 1 of the New York State Constitution).

21.   Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

22.   Plaintiff's rights under Section 8 of Article of the New York State Constitution and under the common law and public policy of the State Constitution and under the common law and public of the State of New York.

23. The Defendants had notice and knowledge of unlawful conduct by Defendants and, through their failure to remedy and prevent such violations of law, have demonstrated deliberated indifferent to the risk that such activity would result in constitutional violations. Defendant, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted such conduct was tolerated, condoned or encouraged, and systematically violated their reported policies prohibiting it

is the custom, usage and unwritten policy, acting under the color of the state law, violated the federally protected rights of plaintiff in violation of 42 U.S.C. Section 1983.

THIRD CAUSE OF ACTION – Breach of Implied Covenant of Good Faith and Fair Dealing

24.  Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

25.  Defendant is obligated by good conscience and common law to act in good faith and to deal fairly with judicial matter. Under common law, a covenant of good faith and fair dealing is implied in every case. The Defendant is obligated to act in good faith and deal fairly with each litigant.

26.  As a result of Defendant's breach of this implied covenant, Plaintiff suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of increased interest, delinquency- and foreclosure-related costs and fees, late fees, longer loan payoff times, higher principle balances, late fees, additional attorney's fees and other damages for breach of contract.

27.  Plaintiff has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing in an amount to be proved at trial.

FOURTH CAUSE OF ACTION – Civil Conspiracy

28.  Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

29. The Defendant acted with malice, ill will, and reckless indifference towards Plaintiff, abuse of judicial powers and in concert with others.

30.  Plaintiff was in fact injured as a direct and proximate result of this malicious combination which, inter alia, committed acts of fraud, denial of due process and breach of fiduciary obligation. As a result, Plaintiff is entitled to an award of actual, compensatory, and punitive damages in an amount to be proven at trial against Defendant, its employees and Agents.

FIFTH CAUSE OF ACTION – Intentional and Negligent Infliction of Emotional Distress

31.  Plaintiff repeats and realleges all paragraph above as if fully set forth herein.

32. Defendant willfully, intentionally and/or negligently acted in reckless disregard for the health and well-being of Plaintiff.

33. Defendant either intended or caused Plaintiff emotional distress or knew or should have known that their actions would cause emotional distress, that their conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community, that their conduct was the proximate cause of Plaintiff's psychic injury, and that the resultant emotional distress was serious, such that a reasonable person normally constituted, would be unable to cope adequately with mental distress generated by the circumstances.

34.   The Defendants intentionally, negligently and maliciously breached their actual or implied contract with Plaintiff. Due to the said conducts Plaintiff became emotionally distressed, apprehensive and fearful of the loss of his property and loss of business opportunities.

35.   Defendants conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress. Plaintiff suffered damages for which he herein sue.

36.  As a result of the acts alleged above, Plaintiff suffered headaches, nausea,, loss of appetite, nightmares, insomnia, night sweats, emotional paralysis, inability to think or function, shortness of breath, anxiety, nervousness, fear, worry, irritability, hysteria, embarrassment, humiliation, indignation, pain and suffering and expenses.

37. As a result of defendant's willful and/or negligent conduct, plaintiff has suffered humiliation, anxiety, and emotional distress and is entitled to an award of damages in an amount to be determined at trial, against Defendant. Defendant is liable to the Plaintiff for actual damages, statutory damages, punitive damages and attorney fees and costs. The Judgments fail to reflect the true facts of the case and I believe it was tampered. See copies annexed hereto as **Exhibits 1, Exhibit 2, Exhibit3, and Exhibit 4.**

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through his undersigned Counsel, hereby demands a trial by jury of all issues so triable as a matter of law pursuant to Rule 38 of the federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiff requests that this Court:

(a)     Enter an order and judgment declaring that Defendants' acts complained of herein violated Plaintiff's rights as secured by the 42 U.S.C. § 1983; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(b)     Enter an order and judgment enjoining Defendants, their agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from engaging in any acts that deprive Plaintiff of his rights secured by any and all of the statutes cited in sub-paragraph (a) above, including the following:

(f)   Grant Plaintiffs such additional relief as justice may require.

Dated: Queens, New York
       July 18, 2017

                                    Respectfully submitted:


                                    _____
                                    AVTAR BADWAL .   ( P ro Sc )
                                    11619 101 Avenue
                                    South Richmond Hill, NY 11419
                                    212 671 2433
                                    badwalavtar@gmail.com

## VERIFICATION

**State of New York**    )

                    **ss:**

**County of Queens**    )

AVTAR S. BADWAL, being duly sworn, deposes and says that I am the Plaintiff in the within action and that I have read the foregoing COMPLAINT and know the contents thereof; the same is true to the best of my knowledge except as to those matter stated to be upon information and belief and as to those matters I believe them to be true.

_____

AVTAR S. BADWAL

Sworn to before me this
19 day of July, 2017

_____
Notary Public

DEBRA MARZIGLIANO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 04MA6323183
QUALIFIED IN NASSAU COUNTY
COMMISSION TO EXPIRE 4/20/2019



### State of New York
### Court of Appeals

John P. Asiello
Chief Clerk and
Legal Counsel to the Court

Clerk's Office
20 Eagle Street
Albany, New York 12207-1095

Decided March 28, 2017

Mo. No. 2017-90

Ramandeep Badwal,
     Respondent,
      v.
Avtar S. Badwal,
     Appellant.

Motion for reargument of motion for leave to appeal denied.

# *State of New York*
## *Court of Appeals*

*Decided and Entered on the*
*twenty-eighth day of March, 2017*

**Present,** Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2017-90
Ramandeep Badwal,
                Respondent,
        v.
Avtar S. Badwal,
                Appellant.

Appellant having moved for reargument of a motion for leave to appeal to the Court of Appeals in the above cause;

Upon the papers filed and due deliberation, it is

ORDERED, that the motion is denied.

                                John P. Asiello
                                Clerk of the Court

Defendant No. *1*

Name *Ramandeep Badwal*

Job or Title *RN.*
(if known)

Street Address *8217 263 st*

City and County *Glen oak.*

State and Zip Code *New york, 11004*

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. *2*

Name *Jeffrey S. Brown*

Job or Title *Judge*
(if known)

Street Address *100 Supreme court Dr 3rd fl.*

City and County *Mineola,*

State and Zip Code *New york 11501*

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. _____

Name _____

Job or Title _____
(if known)

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____
(if known)

EXHIBIT 1

SUPREME COURT: STATE OF NEW YORK
COUNTY OF NASSAU

PRESENT:
    HON. JEFFREY A. GOODSTEIN,
        A.J.S.C.

---

RAMANDEEP BADWAL,                          TRIAL/IAS PART 37
                                           Index No. 201751/2006
                                           Submission Date: 4/17/2015
                        Plaintiff,
                                           Sequence No.: 011

        - against -

AVTAR S. BADWAL,

                        Defendant.    DECISION AND ORDER

---

The following papers were read on this motion:

Notice of Motion, Affirmation in Support, and Exhibits..............1
Report of Receiver and Exhibits.....................................2

---

        This post-judgment motion was brought by the Plaintiff ("Ex-Wife")
seeking distribution of the proceeds currently held in escrow by the
Court Appointed Receiver, Michael Montesano, Esq. (the "Receiver") from
the sale of the former marital residence.  The Ex-wife provided proof of
service of the within motion upon the Defendant ("Ex-Husband"), who
failed to oppose same.

        Pursuant to the Decision After Trial of Judge Jeffrey Brown dated
July 1, 2010 (the "Trial Decision"), the Ex-Husband was directed to place
the former marital residence on the market for sale within 30 days after
service of a copy of the Trial Decision.  The Trial Decision also
required the Ex-Husband, who was in sole possession of the former marital
residence, to pay all of the carrying charges including the mortgage
until the property was sold.

        Based upon the evidence presented, the former marital residence
should have been listed on the market for sale on or before December 16,
2010.  The Ex-Husband failed to respond to the Ex-Wife's request to list

1

12

the former marital residence at that time. The Ex-Wife was then forced to commence post judgment proceedings to effectuate the sale of the former marital residence, including the filing of an emergency Order to Show Cause because of the foreclosure action commenced by CitiMortgage.[1] The Ex-Husband filed a cross motion, additional orders to show cause and appeals seeking a stay of the sale of the former marital residence, all of which were denied.

By Decision and Order dated September 17, 2014, Judge Margaret Reilly appointed the Receiver, at a payment rate of 5% commission of the sale price to sell the former marital residence. In addition, Judge Reilly granted a money judgment to the Ex-Wife against the Ex-Husband for the sum of $64,800.00 representing Ex-Husband's child support arrears. Pursuant to the report issued by the Receiver, the Ex-Husband continued his course of conduct to intentionally further delay the sale of the former marital residence.

The closing of the former marital residence eventually occurred on June 19, 2015. As set forth by the Receiver, the sum of $309,224,38 is being held in escrow representing the net proceeds from the sale after the payoff of the CitiMortgage lien. The CitiMortgage payoff letter establishes that the principal mortgage balance was $320,243.89, at the time of the Ex-Husband's default in November 2011. The difference of $93,015.37 between the payoff of $413,259.35 and the $320,243.98 mortgage balance represents all of the charges resulting from the Ex-Husband's failure to pay the mortgage. Therefore, the Ex-Wife's equity was reduced by one-half of $93,015.37, or $46,507.68 as a result of the Ex-Husband's default.

Specifically, the Wife requests that from the net proceeds, $29,400.00, representing claims for real estate brokerage commissions, continue to be held in escrow pending the resolution of whether brokerage fees are actually owed and the extent of the fees, if any. The Ex-Wife disputes that a commission is owed, other than the possibility of a 2% commission. Then, from the remaining balances of $279,824.38, after the

---

[1] CitiMortgage is the mortgage holder of the former marital residence, based upon the Ex-Husband's failure to pay the mortgage.

deduction of $29,400.00, the Ex-Wife requests that the fee of the Receiver, totaling $36,750.00, be paid from the Ex-Husband's share of the net proceeds. Ex-Wife argues that the entire fee of the Receiver should be deducted from the Ex-Husband's share of the proceeds. If granted, after the deduction of the fees of the Receiver, Ex-Husband's interest in the net proceeds would be $103,162.19. From said balance, the Ex-Wife requests her attorney fees be paid in full by the Ex-Husband based upon his failure to abide by the Trial Decision. The legal fees incurred through the preparation of the instant motion total $15,740.00. Therefore, after a deduction of counsel fees Ex-Wife argues that, there remains the sum of $87,522.19 from the Ex-Husband's share of the proceeds. Ex-Wife further argues that an additional $19,526.00 should be deducted from the Ex-Husband's interest representing one-half of the reduction of the mortgage principal which would have occurred if the Ex-Husband had not defaulted on the payments of the mortgage on November 1, 2011. The amount is one-half of the amount that the mortgage balance would have been reduced if Ex-Husband followed the Trial Decision. After applying all of these deductions to the Ex-Husband's interest, his remaining net proceeds is $21,286.51. However, Ex-Wife requests that since she has an outstanding money judgment against Ex-Husband for $64,000.00 in child support arrears, the remaining balance should be deducted and paid to Ex-Wife to reduce the monies owed by the Ex-Husband on the money judgment to $42,713.49.

## DISCUSSION

With regard to the issue of the broker's commission dispute, the Receiver, in his report, explains that he did not pay a broker's commission at the time of the closing because:

    a) It appears that the listing agreement expired August 30, 2014 and was not renewed and the contract of sale was consummated on October 3, 2014;
    b) There is a dispute between the Ex-Wife, who is the only signatory to the listing agreement, as to what the percentage of the commission was; and
    c) The Receiver was not given a commission statement until after the closing and the Ex-Wife's attorney indicated that he would work it out post-closing. None of the brokers appeared at the closing. The potential commission is approximately $44,100.00

14

based on 6% however the Ex-Wife maintains it is 2% and that the agreement was changed after she signed it.

Based on the foregoing, the Ex-Wife's requests are to a certain extent, **GRANTED**. The Ex-Husband simply failed to abide by the Trial Decision, delayed access to the Receiver, and made frivolous motions seeking to reargue the Trial Decision years later, all of which required the Ex-Wife to obtain counsel to force the Ex-Husband to comply with the Trial Decision. For the Ex-Wife to receive less proceeds due to Ex-Husband's failure to pay the mortgage, decreasing the net proceeds from the sale of the former marital residence would be inequitable. In addition, in compliance with the order appointing Receiver, he is entitled to 5% commission plus his additional expenses totaling $553.38, of which he provided proper proof. Accordingly, it is hereby

**ORDERED**, that with the proceeds of **$309,224.38** being held in escrow by the Receiver, he shall continue to hold **$44,100.00**[2] in escrow until the issue regarding the broker's fee is resolved.

**ORDERED**, that the Receiver shall release to himself **$36,750.00** as and for his 5% fee pursuant to the Order Appointing Receiver, plus **$553.38** in expenses from the Ex-Husband's share of the proceeds and it is further

**ORDERED**, that **$15,700.00** shall be distributed from Ex-Husband's interest to Ex-Wife's counsel as and for the legal fees incurred seeking to enforce the Trial Decision based on Ex-Husband's dilatory tactics; and it is further

**ORDERED**, that all remaining funds (**$212,121.00**) shall be distributed to the Ex-Wife consisting of her half interest in the proceeds of the former marital residence as set forth in the Trial Decision, and a credit of **$19,526.00** which represented one-half of the reduction of the mortgage principal which would have occurred if the Ex-Husband had not defaulted on the payments of the mortgage on November 1, 2011; and **$46,507.67** as

---

[2] Totaling the possible 6% commission, based upon the listing agreement.

4

15

and for one-half of the additional fees (including, interest, penalties, late fees, fees of the Lender's foreclosure attorney and other fees associated with the foreclosure) charged by CitiMortgage as a result of the Ex-Husband's default and the remaining **$13,525.14** shall to be applied to Ex-Husband's child support arrears reducing his money judgment; and it is further

**ORDERED**, that after the dispute with the broker regarding the remaining $44,100.00 in escrow is resolved between the Ex-Wife and the brokers, or further order of a court of competent jurisdiction, the remaining sum, if any, shall be distributed to Ex-Wife as a further credit against the money judgment for Ex-Husband's child support arrears.

Therefore, based upon the foregoing, after deducting the $44,100.00 to continue to be held in escrow, the remaining balance is $265,124.38. Pursuant to the Trial Decision, each party is supposed to receive half of the proceeds. This would entitle each party to $132,562.19. However, based upon the credits listed above, the Ex-Wife shall receive $212,121.00 and the Ex-Husband shall receive $0.00, as follows:

Deducted from the Ex-Husband's share is **$37,303.38** for the Receiver (Ex-Husband's distributive share is now reduced to $95,258.81); Deleted from Ex-Husband's share is **$15,700.00** to be paid to Ex-Wife's counsel (Ex-Husband's distributive share is now reduced to $79,558.81);

Deducted from Ex-Husband's share and added to the Ex-Wife's share is **$19,526.00** representing one-half of the reduction of the mortgage principal if Ex-Husband did not default (Ex-Husband's distributive share is now reduced to $60,032.81 and Ex-Wife's distributive share is increased to $152,088.19);

Deducted from Ex-Husband's share and added to Ex-Wife's share is **$46,507.67** representing one-half of the additional fees charged by CitiMortgage as a result of Ex-Husband's default (Ex-Husband's distributive share is now reduced to $13,525.14 and Ex-Wife's distributive share is increased to $198,595.86); and

Deducted from Ex-Husband's share and increasing the Ex-Wife's share is $13,525.14 to reduce Ex-Husband's child support arrears (Ex-Husband's distributive share is now reduced to $0.00 and the Ex-Wife's distributive

Any other requested relief not addressed herein is denied.

This is the Decision and Order of this Court.

Dated: August 3, 2015
      Mineola, New York

ENTER:

_____
HON. JEFFREY A. GOODSTEIN,
        A.J.S.C.

17

EXHIBIT 2

*18*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

**TRIAL/IAS PART 28**

Present: **HON. JEFFREY S. BROWN**

**ORDER**

**Justice**

_____X

Index No. **201751/06**

RAMANDEEP BADWAL

                                    Plaintiff,

Motion Seq. # 01
Motion Date: 1/23/08
Submit Date: 4/11/08

                - against -

AVTAR S. BADWAL,

                                    Defendant.

_____X

The following papers were read on this motion:

1.   Notice of Motion for Pendente Lite Relief
2.   Affidavit in Support of Motion for Temporary Support
3.   Affidavit in Opposition
4.   Reply Affirmation

Plaintiff moves by motion for the following  pendente lite relief : a) granting Plaintiff

temporary sole custody of the minor children of the marriage; b) pursuant to DRL § 236, directing

the Defendant to pay to the Plaintiff temporary weekly child support in the amount of $400.00 per

week; c) pursuant to DRL § 236(b)(6)(a), directing that Defendant pay any and all carrying charges

for the former marital residence in Forest Hills, New York, which is exclusively occupied by the

Defendant, including, but not limited to the mortgage, taxes, homeowners insurance, maintenance

and repairs, oil, water, electric, and other utilities; d) pursuant to DRL § 237(d), directing Defendant

to maintain and pay the existing home, automobile, life insurance and health insurance and to pay

a pro rata share of all uncovered or unreimbursed health costs for the minor children; e) restraining

and enjoining the Defendant or his attorney, agents, heirs or assigns, or anyone acting in concert

1

*19*



SUPREME COURT NASSAU COUNTY
Plff.
Deft.                    (Evid.
Pet.          EXHIBIT: 2   Ident.
Resp.

APR  7 2009

CATHERINE TURBEK
Official Reporter

therewith, be they known or unknown, from transferring, removing, dissipating, encumbering or hypothecating assets subject to equitable distribution pending the determination of the underlying matrimonial action.

The instant action was commenced on June 16, 2006 by the filing of a Summons for Divorce. The Plaintiff states that the parties were married in Chandigarh, India on February 14, 1988 in arranged marriage, which is the custom in India. The Plaintiff moved to the United States in May, 1988 to live with the Defendant who was a resident here. There are three children born of this marriage, to wit: Sujit Singh born June 27, 1989; Bani Kaur Badwal born November 1, 1991; and Simran Kaur Badwal born November 19, 1993. Plaintiff states that the two younger children currently reside with her in a one family residence in New Hyde Park, New York. The oldest child resides at Stonybrook University where he attends college. The Defendant resides, with his nephew, in the former marital residence located in Forest Hills, New York. Plaintiff avers that the nephew works and contributes money to the Defendant.

The former marital home is a legal two family residence. Plaintiff alleges the upstairs apartment is rented at a rate of $1,330.00 per month and the basement apartment is rented at $750.00 per month bringing the total rental income to $2,080.00 per month. Defendant allegedly retains all of the rental income.

Plaintiff is currently employed as a nurse earning an annual salary of $65,000.00. She states she has no other source of income and has credit card debt totaling over $30,000.00. Defendant allegedly earned a bachelor's degree in education and a master's degree in botany in India before immigrating to the United States. Defendant has held many different jobs during the course of the marriage. In 1993, Defendant allegedly purchased a taxi Medallion. In 2003, he sold the Medallion

2

for the approximate sum of $227,000.00. Thereafter, a motel was purchased in Kansas. The parties moved to Kansas and worked to run the motel until 2006 when it was sold. The Plaintiff believes the motel was sold for the advertised price of $500,000.00 although Plaintiff was not informed of the actual sale price. Plaintiff was given $200,000.00 from the proceeds of that sale. Defendant allegedly kept the balance.

In June 2006, Plaintiff filed for divorce, moved out of the marital residence and purchased a home in New Hyde Park, New York for $725,000.00. The home was financed with a mortgage of $580,000.00 and with Plaintiff's proceeds from the sale of the motel. Plaintiff contends that the Defendant started a business as a tow truck operator and owns his truck. She is unaware of how much the Defendant currently earns but believes he is doing "well." It is alleged that the Defendant has not paid any child support since the Plaintiff moved out of the marital home in June 2006. Plaintiff has put the New Hyde Park residence on the market.

According to Plaintiff's statement of net worth, she and the children incur the following monthly expenses: mortgage $4,500.00; utilities $950.00; food $1,550.00; clothing $750.00; laundry $130.00; insurance $270.00; unreimbursed medical $700.00; household maintenance $970.00; automotive $540.00; educational $850.00; recreational $1,153.00; miscellaneous $805.00 for a total of $13,168.00.

Plaintiff indicates the value of her savings accounts are $3,015.00; value of real estate amounts to $780,000.00; and value of two vehicles are $23,000.00.

Defendant opposes the motion. In his Affidavit in Opposition, Defendant asserts that he presently earns $18,000.00 per year as a tow truck operator. He attaches for the Court's review copies of his 2007 W-2 form which shows earnings of $19,999.92 and a copy of his 2006 income

3

tax return which shows his adjusted gross income of $1,448.00.

Defendant states that he lives in the marital home and receives rental income of $1,340.00 monthly. He denies receiving rental income from a basement apartment. He indicates the monthly mortgage payment is $2,650.00 and the monthly tax payment is $400.00.

Defendant alleges that the motel in Kansas was bought and sold for $375,000.00. He indicates there were closing costs in the amount of $25,000.00 and he received $144,000.00 from the sale while the Plaintiff received $245,000.00. Defendant purchased a tow truck for $35,000.00 and lost $40,000.00 in a gas station investment. He allegedly used the remaining $69,000.00 to support the family in 2006 when he was too ill to work. Defendant indicates a credit card debt in the amount of $38,000.00, however, this debt is not reflected on his statement of net worth. Defendant contends that the parties' son resides with him while he attends Stony Brook University.

Defendant's statement of net worth reflects the following monthly expenses: housing and taxes $2920.00; utilities $625.00; food $600.00; clothing $150.00; laundry $40.00; insurance 250.00; unreimbursed medical $125.00; household maintenance $220.00; automotive (Mercedes) $510.00; educational $50.00; Recreation $30.00; Miscellaneous $120.00 for a total of $5,640.00.

The statement of net worth indicates a gross income of $5,001.98; value of household furnishings $10,000.00; value of jewelry of wife $7,000.00 and a credit card debt in the amount of $2,000.00.

In reply, Plaintiff points out that Defendant's expenses far exceed his alleged income of $18,000.00 per year. In addition, Plaintiff asserts that on February 27, 2008 Defendant mailed a notarized affidavit to her counsel's office which indicates he earned a gross income from the motel of $130,000.00 per year (*Reply Affirmation Exhibit A*).

4

22

In awarding temporary child support, the court has considered the guidelines contained in the Child Support Standards Act (Domestic Relations Law §240 [1-b][c]) as well as the factors which permit a deviation from the standard calculation, as delineated in §240 (1-b)(f), such as the financial resources of the custodial and non-custodial parent and those of the children, the physical and emotional health of the children, and his or her educational or vocational needs and aptitudes, as well as the non-monetary contributions that the parents will make toward the care and well-being of the children. *See Killian v. Lowden*, 236 A.D.2d. 236, 654 N.Y.S.2d. 288 (1st Dept. 1997). The court also has taken into account the shelter costs attributable to the children in order to avoid duplication of awards. *Linda R. H. v. Richard E. H.*, 205 A.D.2d 498, 612 N.Y.S.2d 656 ( 2nd Dept. 1994). In calculating an award of child support, the court can impute income to a spouse predicated upon that individual's past earnings, actual earning capacity and educational background, however, the parents' earning potential upon which the court relies to render an award, must have a basis in law and fact. *Gezester v. Shoshani*, 283 AD2d 455[2nd Dept 2001]; *see also Petek v. Petek*, 239 AD2d 327 [2nd Dept. 1997].

Guided by the above, Defendant is directed to pay $250.00 per week child support. The Court bases its decision on the documentation and, more importantly, the lack of documentation, provided by the parties. For instance, the Court was not provided with a closing statement from the sale of the motel. Since the affidavits of the parties conflict it was impossible to discern what the proceeds from the sale were.

Based on the foregoing, Defendant is directed to pay all carrying charges, including

23

but not limited to, mortgage payments, insurance and utilities such as gas, electricity, heat, and telephone service, for the marital residence in Forest Hills. Defendant is also directed to maintain and continue policies of life, auto, medical and dental insurance, if any, on behalf of Plaintiff and the parties' children and to pay a pro rata share (50%) of all un-reimbursed non-elective medical, psychiatric and dental expenses for the parties' children. He shall not be responsible for any elective procedures, nor to pay for services of any physicians who are not participants in the medical insurance plan network maintained by defendant, except in consideration of any established physician relationship. *Hills v. Hills,* 240 A.D.2d. 707, 660 N.Y.S.2d 36 (2nd Dept. 1997)

The award is retroactive to the original date of service of this application. *See* Domestic Relations Law §236B(6); *Selznick v. Selznick,* 251 A.D.2d 489, 673 N.Y.S.2d 919 (2nd Dept. 1998). Retroactive sums due by reason of this award shall be paid at the rate of $400.00 per month in addition to the sums awarded until all arrears have been satisfied. Defendant may take a credit for sums voluntarily paid for actual support of the children incurred after the making of this motion and prior to the date of this decision for which he has canceled checks or other similar proof of payment. *See Daniels v. Daniels,* 243 A.D.2d 254, 663 N.Y.S.2d 141 (1st Dept. 1997); *Ferraro v. Ferraro,* 257 A.D.2d 598, 684 N.Y.S.2d 276 (2nd Dept. 1999). The first payment hereunder shall be made within seven (7) days of the date of this decision and then weekly thereafter.

The branch of Plaintiff's motion requesting temporary sole custody of the children is denied.

24

In child custody proceedings the court must consider the best interests of the child. In determining the best interests of the child, the court must look at the totality of the circumstances, and consider the quality of the home environment, the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the relative fitness of the respective parent, and the effect an award of custody to one parent might have on the child's relationship with the parent.( *Zafran v. Zafran,* 306 AD2d 468 [2nd Dept. 2003] Domestic Relations Law § 70[a]; *Eschbach v Eschbach,* 56 N.Y.2d 167, 171, 451 N.Y.S.2d 658, 436 N.E.2d 1260 [1982]; *Miller v Pipia,* 297 A.D.2d 362, 364, 746 N.Y.S.2d 729 [2002]).

The issue of temporary custody is hereby referred to a hearing for a determination as to what is in the children's best interest. Said hearing shall be scheduled at the next conference date, at which time all parties are expected to be present.

Ordered that both the Plaintiff and Defendant are enjoined from selling, transferring, conveying or otherwise disposing of assets pending further court order, except for ordinary and routine living and business expenses, in order to maintain the status quo for possible equitable distribution upon the plenary trial of this action (*see Leibowits v. Leibowits,* 93 AD2d 536 [2nd Dept. 1983]). The exception for "ordinary and routine living expenses" contemplates that payment of these expenses be paid from current income unless current income is insufficient to meet the reasonable needs of the parties. The parties are cautioned that any unauthorized invasions of assets for any purpose may result in a finding of contempt

7

25

if it is later found that current income was not exhausted prior to invasion of assets.

The parties are directed to appear for a conference on May 20, 2008 at 9:30 a.m.

This constitutes the decision and order of this Court. All applications not specifically

addressed herein are denied.

Dated:Mineola, New York
     May 2, 2008

JEFFREY S. BROWN
J.S.C.

8

26

EXHIBIT 3

27

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

P R E S E N T : HON. JEFFREY S. BROWN
                                JUSTICE

---------------------------------------------X     TRIAL/IAS PART 23

RAMANDEEP BADWAL,

                        Plaintiff,     Index # 201751/06

        - against -     DECISION AFTER TRIAL

AVTAR S. BADWAL,
                      Defendant.

---------------------------------------------X

      Before this court is a contested matrimonial action.  Plaintiff-wife, Ramandeep Badwal, and defendant-husband, Avtar Singh Badwal, were married in India in a religious ceremony on February 14, 1988. Subsequently, on July 29, 1991 plaintiff and defendant were married in a civil ceremony by a Judge in Queens County, New York.  This action was commenced on or about June 16, 2006.

      Plaintiff is approximately 42 years of age and defendant is approximately 57 years of age. There are three children of this union:  Sujit Singh, born June 27, 1989, who resides with defendant; Bani Badwal born November 1, 1991; and Simaran Badwal, born November 19, 1993, who reside with the plaintiff.

      With respect to custody and parenting time, on April 8, 2009, a stipulation was placed on the record in open court wherein the plaintiff would have sole physical and legal custody of the two children of this marriage who are below the age of 18, namely Bani and Simaran.  The parties also agreed that the plaintiff-mother would consult with the defendant-father regarding all

28

issues pertaining to health, education, schooling and the children's welfare.  Further, the defendant father would have liberal visitation with Bani and Simaran as mutually agreed to by the parties and the children.

With respect to grounds, plaintiff testified that commencing on or about January 1, 2005, she repeatedly asked defendant to engage in sexual relations for a period of at least one year, and for this one year period, defendant continuously refused to engage in sexual relations with her. Further, there was no psychological or physical reason preventing the defendant from having sexual relations with the plaintiff.

Plaintiff testified that she was a resident of the State of New York for at least two years prior to the commencement of the action.  She also testified that she would take all steps necessary to remove all barriers to the defendant's remarriage following the divorce.  There are no other actions pending for divorce, separation or annulment or judgments resulting therefrom. Defendant withdrew his answer and neither admitted nor denied the allegations testified to by the plaintiff.

Pursuant to a *pendente lite* order of this court (Brown, J.,5/2/08) defendant was directed to pay child support in the amount of $250.00 a week retroactive to the date of the application. Defendant was also directed to maintain and continue policies of life, auto, medical and dental insurance and to pay 50% of all unreimbursed non-elective medical, psychiatric and dental expenses provided by a participating physician for the plaintiff and the children retroactive to the date of the application.

Plaintiff testified that defendant failed to pay any child support pursuant to that order. Defendant concedes that he has not paid the child support as directed by the court, nor did

2

29

defendant pay the automobile, medical or dental insurance premiums. Plaintiff testified that she paid $222.00 per month as and for automobile insurance.

The children were covered until a few months before April 2009 with Child Health Plus where there were no premiums. However, the policy was cancelled due to the fact that plaintiff earned too much money. Presently she pays $550.00 per month for health insurance for herself and the children.

Plaintiff was born January 1, 1968 in India. The parties first met there in January 1988. She came to the United States in May 1988. Prior to that she was enrolled in an interior design course. The defendant told her that he was in the "fast food restaurant" business, and if she came to the United States with him, there would be no need for her to work.

Upon arriving in the United States, the parties resided in a small room in Elmhurst, Queens, with friends of the defendant. Plaintiff learned that her husband was unemployed. Prior to that, the defendant was employed in West Germany for approximately ten years. Defendant rented a newsstand in 1988. After a few months, the plaintiff and defendant moved to Sunnyside, Queens. At that time, defendant started to drive a taxi, with a rental fee of approximately $80 a day. After three years, in 1991, he purchased his own medallion for approximately $150,000; $5,000 of which came from plaintiff's savings, and the balance came from friends. Plaintiff testified that the $5,000 came from money she received from her husband and gifts from friends. Her cousin and a family friend, Mr. Sharma, each gave her $1,500. She kept $4,000 in the closet. On May 7, 1993, defendant also took out a small business loan for $116,000.

Plaintiff was a full time student at LaGuardia College in 1991. After six years, she transferred to Wagner College and obtained a Bachelor's Degree in Nursing in 1997. She was employed part time in a nursing home for about one year. In December 1998, she became employed full time as a registered nurse at Mount Sinai Hospital in Astoria, Queens, and was employed there approximately four years. At that time she earned approximately $50,000 to $55,000 per year. She worked at St. John's Hospital for about eight months in 2002 earning approximately $72,000.

The parties purchased a legal two-family home in Forest Hills, Queens, in 1997, for approximately $255,000. Joint funds and money from friends in the amount of $35,000 were used to make this purchase. Plaintiff estimates that they borrowed less than $20,000 from friends. Their friend, Mr. Sharma, gave them $5,000 in cash toward the purchase of the house. Additionally, defendant told plaintiff that a Mr. Daniel also gave them $5,000. Plaintiff testified that once she started working she paid back Mr. Sharma. Plaintiff believes some of the down payment came from defendant's medallion. A mortgage of approximately $200,000 was obtained from the Greenpoint Savings Bank and the deed contained both of their names.

Defendant sold his medallion for about $230,000 in 2003 and then purchased a 29-unit motel in Abilene, Kansas, for $370,000. Approximately $80,000 towards the purchase price came from the sale of the medallion, $30,000 came from plaintiff's savings and other funds came from a refinance of the mortgage on the marital residence with Citibank. Defendant testified that the motel generated approximately $5,000 in profit per year. Further, defendant testified that he drew a salary of $5,000 in 2005. However, defendant testified that he received cash from the daily check-in at the motel which he allegedly gave to his wife.

4   3/

Plaintiff and her two daughters moved to Abilene, Kansas. Their son remained with plaintiff's mother in the marital residence. Plaintiff paid the mortgage on the marital residence from the HSBC account while the parties were in Kansas.

Plaintiff returned to the marital residence in New York in August of 2004 with her daughters. Her husband remained in Abilene operating the motel until March of 2006. Upon his return, defendant advised the plaintiff that he sold the motel for $470,000. Plaintiff did not have any advance knowledge of the sale nor did she sign any papers. Defendant testified that plaintiff gave him her power of attorney in order to close on the sale of the motel. Defendant advised plaintiff that he received $100,000 in cash for the sale of the motel. He also showed her three checks: two checks in the amount of $100,000 each and one check in the amount of $88,000. Plaintiff testified that defendant gave her two checks ($200,000) from the sale of the motel. She put that money in her own Chase checking account. Plaintiff testified that defendant took the $100,000 in cash to India. The balance of the money that defendant kept was used to purchase a tow truck. Defendant now owns two tow trucks.

Plaintiff is presently employed as a Registered Nurse supervisor. She works part time for two organizations: Personal Touch and First Choice. For the tax year 2008, plaintiff earned $84,334 in wages. As of March 1, 2009, plaintiff earned $12,556 from First Choice Home Care.

Defendant started a 24-hour towing service on or about December 17, 2006 called Eagle Grip Towing. The defendant testified that he is the only employee. He has a certificate from the City of New York Consumer Affairs Department which authorizes him to operate a tow company on local streets. Other than the rental income, the corporation is his sole source of income. He testified that he purchased a truck in August of 2006 for $30,000. The money came from the sale

32

of the motel and cash from a Citibank account. The account was funded by the return of the escrow funds held by the title company. Defendant was unsure if any funds were left in this account. He purchased the second truck in September 2007 for about $56,000. The money came from cash advances from credit cards as well as loans from his nephew and friend. Apparently a friend, Mr. Paul, is making the monthly credit card payments. This friend is reimbursed in India by the defendant's parents, who pay Mr. Paul's parents in cash. These payments commenced in 2009 and are continuing.

The defendant operates the tow truck during the day. Mr. Paul takes the evening shift and keep the money he earns from those calls, as he is an independent contractor. Defendant denies that Mr. Paul pays him any money for use of the truck. Defendant also gets business from 10-15 repair shops.

Defendant testified that he attempted to purchase a gasoline station in June of 2006 for $35,000. Presently litigation is pending since the deal did not conclude.

Defendant's 2006 Federal Tax Return showed earnings of $1,000; defendant's W-2 in 2007 showed wages of $19,999; and in 2008 defendant's federal tax return showed earnings of 18,867. Defendant's corporate entity, Eagle Grip Towing, Inc., filed a 1120 corporate tax return in 2008 which showed gross receipts of $29,914 and compensation for officers of $16,667. Defendant's personal income tax return for 2009 showed earnings of $20,000. Defendant presently takes a salary from the corporation of $400.00 per week.

6

33

Defendant returned to the marital residence in March 2006, and in September of 2006, plaintiff moved out of the house with the two youngest children. She purchased a home in New Hyde Park for $725,000. The down payment of $142,000 came from her share of the proceeds from the sale of the motel. The house was subsequently placed on the market for sale because she could not afford the monthly mortgage payment of $4,500.

The upstairs apartment of the marital residence was rented out for $1,330 per month. The basement was periodically rented out for approximately $700 per month. Presently someone is in the basement apartment. Defendant paid the mortgage, real estate taxes and the carrying charges of the marital residence in the amount of $2,814.30 monthly from the proceeds of the motel and the rental income. According to defendant's testimony and net worth statement, the monthly carrying charges are approximately as follows:

| | |
|---|---|
| gas | $150.00 |
| electric | $200.00 |
| telephone | $117.00 |
| cell phone | $133.00 |
| water | $ 83.33 |
| liability insurance | $100.00 |
| auto insurance | $ 50.00 |
| food | $600.00 |
| gas and oil for car | $300.00 |
| money for son | $200.00 |

34

There are also hundreds of dollars of monthly incidental expenses. However, defendant failed to provide the court with any evidence that substantiates his testimony with respect to the carrying charges and expenses. Defendant alleges that he took a loan from a Prudential Insurance life policy in 2008 to help repay money owed to Chase and Citibank. However, he has no recollection as to the amount of the loan.

Plaintiff purchased a Honda CRV in 2002 for approximately $22,000 or $23,000, and the car was paid off in two years. However, plaintiff had no recollection of the monthly payments or whether she completely financed it. She purchased a Rav4 for $28,000 in April 2008. Plaintiff financed the automobile. The monthly insurance for the two cars is $222 per month.

### Maintenance

"'The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts'" (*DiBlasi v. DiBlasi*, 48 AD3d 403, 404, quoting *Wortman v. Wortman*, 11 AD3d 604, 606). "'In determining the appropriate amount and duration of maintenance, the court is required to consider, among other factors, the standard of living of the parties during the marriage and the present and future earning capacity of both parties'" (*Ruane v. Ruane*, 55 AD3d 586; *DiBlasi v. DiBlasi, supra* at 404, quoting *Haines v. Haines*, 44 AD3d 901, 902; see also *Domestic Relations Law* §236[B][6][a]). "In fixing the amount of a maintenance award, a court must consider the financial circumstances of both parties, including their reasonable needs and means, the payor spouse's present and anticipated income, the benefitting spouse's present and future earning capacity, and both parties' standard of living" (*Cerabona v. Cerabona*, 302 AD2d 346; *Morrissey v. Morrissey*, 259 AD2d 472, 473; see *Feldman v. Feldman*, 194 AD2d 207, 218).

Plaintiff is employed full time as a registered nurse supervisor for businesses that provide home care.   Defendant is gainfully employed as the owner of a tow truck company.   At the commencement of this trial, both counsel acknowledged to the court that maintenance was not an issue at this trial.   Therefore, no award of maintenance is made for either the plaintiff or defendant.

## Equitable Distribution

DRL § 236(B)(1)(c ) defines marital property as "all property acquired by either or both spouses during the marriage and before . . . the commencement of a matrimonial action, regardless of the form in which title is held" (see *Seidman v. Seidman*, 226 AD2d 1011, 1012 [1996]). "Separate property, on the other hand, is defined, in part, as 'property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse'" (DRL §236[B][1][d][1]; *Sieger v. Sieger*, 8 Misc 3d 1029[A]). "In determining equitable distribution, the trial court is directed to consider statutory factors, including the income and property of each party at the time of the marriage, and at the time of commencement of the divorce action, the duration of the marriage, the age and health of the parties, any maintenance award, and the nontitled spouse's direct or indirect contributions to the marriage, including 'services as a spouse, parent, wage earner and homemaker'" (*Loria v. Loria*, 46 AD3d 768; Domestic Relations Law § 236[B][5][d][6]; *see Holterman v. Holterman*, 3 NY3d 1, 8; *Price v. Price*, 69 NY2d 8, 11). "In fashioning an award of equitable distribution upon dissolution of marriage, the Supreme Court is required to discuss the statutory factors it relied upon in distributing marital property" (*Milnes v. Milnes*, 50 AD3d 750). "Equitable distribution, however, does not necessarily mean equal distribution" (*Arrigo v. Arrigo*, 38 AD3d 807).

36

The plaintiff and defendant were married approximately 20 years. Plaintiff is approximately 42 years of age, and defendant is approximately 57 years of age. Both litigants are in good health and gainfully employed. Prior to commencement of the action in June 2006, defendant sold the motel which was marital property. Only defendant was at the closing. The parties dispute the distribution of the net proceeds of the sale. Plaintiff testified that defendant sold the motel for $470,000. Defendant allegedly received $100,000 in cash from the purchasers, which plaintiff claims was taken to India by the defendant. Three additional checks were cut: two for $100,000 each, which plaintiff kept and deposited, and one for $88,000, which plaintiff contends defendant kept. Defendant agrees that plaintiff received $200,000. However, he claims that plaintiff took the checks from a briefcase without his knowledge. He testified that he kept one check in the amount of $89,000 as well as $60,000 returned to him from escrow and $15,000 from the buyers. The closing statement from the sale of the motel was not put into evidence. No other financial evidence was produced that would substantiate either claim.

Both litigants' testimony tests the limits of credibility. All through their marriage, friends and relatives were lending and gifting large sums of money. Money was also kept in the closet. Convoluted repayment arrangements were made through defendant's family in India. Cash was allegedly received from a buyer at the closing in the amount of $100,000 which was subsequently taken to India. The court finds it difficult to believe either litigant with respect to the financial transactions of this marriage. With respect to the motel net proceeds, the court determines that the parties equitably distributed these funds back in 2006. Therefore, no distribution will be made as part of this decision.

Domestic Relations Law § 236 (B)(1)(c) defines marital property as all property acquired

37

"during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action." Thus, in the absence of a separation agreement, the commencement date of a matrimonial action demarcates "the termination point for the further accrual of marital property" (*Mesholam v Mesholam*, 11 NY3d 24; *Anglin v Anglin*, 80 NY2d 553, 556 [1992]).

Post commencement, each party used their respective net proceeds in different ways. Plaintiff purchased a house in New Hyde Park, and defendant opened his towing company. Therefore, these properties are not considered marital property and are not subject to equitable distribution.

The marital home is subject to equitable distribution. It is problematic that no expert testimony was adduced at trial as to the value of this home. The defendant presently resides there with his son who is over the age of 21 years. He uses the money from the rental apartments located in the marital home in order to partially pay the mortgage. However, by the court's calculation defendant does not bring in sufficient sums to keep the house financially solvent. There is no credible evidence presented to the court relative to what equity remains, if any, with respect to the marital residence. As a result, the court directs the sale of the marital residence with the net proceeds being divided equally. The litigants shall contact a broker and comparables shall be used to set a listing price. The house shall be placed on the market within 30 days after service of a copy of this order upon the defendant's counsel with notice of entry. Defendant shall use the rental income to pay the mortgage.

## Child Support

"Child support is determined by the parents' ability to provide for their child rather than their current economic situation" (*Bittner v. Bittner*, 296 AD2d 516; *Kalish v. Kalish*, 289 AD2d

11

3.8

202; *see Matter of Zwick v. Kulhan*, 226 AD2d 734). In determining a party's child support obligation, the court "need not rely upon the party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated earning potential" (*Strella v. Ferro*, 42 AD3d 544; *Matter of Westenberger v. Westenberger*, 23 AD3d 571; *see Spreitzer v. Spreitzer*, 40 AD3d 840; *Matter of Apgar v. Apgar*, 37 AD3d 598, 599; *Bernstein v. Bernstein* 18 AD3d 683, 684). "Moreover, the court is not required to find that a party has deliberately reduced his income to avoid his support obligations in order to impute income to that party" (*Bittner, supra*; *Goddard v. Goddard*, 256 AD2d 545.) This determination must be grounded in law and fact (*see, Powers v. Wilson*, 56 AD3d 639) In addition, the defendant's invocation of his fifth amendment privilege when asked certain questions about reporting income, permits the court to make an adverse inference against him" (*Fritz v. Fritz*, 88 AD2d 778).

Sujit, the oldest child, age 21, resides with the defendant. As a result, defendant cannot receive prospective child support on behalf of Sugit, The two youngest children presently reside with the plaintiff, having left the marital residence in September 2006 and moving to New Hyde Park. By order of this court (Brown, J., 5/2/08), defendant was directed to pay child support in the amount of $250 per week. Defendant concedes that he has not made these payments.

Defendant testified that he earns $400 per week. His 2009 tax return shows that he earned approximately $20,000. He also receives $2,030 monthly for apartments he rents in the marital residence or approximately $24,360 per year. Defendant exercised his fifth amendment right against self incrimination when asked whether he reported the 2009 rental income which amounts to $44,360 annually.

The monthly mortgage and real estate taxes amount to $2,814.30 or approximately

12

39

$33,771.60 annually. The other carrying charges of the marital residence plus incidental expenses amount to $1,783 a month or approximately $21,396 per year. The total expenses are $55,167 a year, not including other incidental expenses a person incurs during his day-to-day existence. It is apparent that more than $10,000 a year is needed above this income in order to pay the fixed expenses.

The Supreme Court is not required to rely upon a party's account of his or her finances (*see* DeSouza-Brown v Brown, 71 AD3d 946; Khaimova v. Mosheyev, 57 AD3d 737; Ivani v. Ivani, 303 AD2d 639). In determining an award of child support, the Supreme Court "may depart from a party's reported income and impute income based on the party's past income or demonstrated earning potential" (*Mongelli v. Mongelli*, 68 AD3d 1070, 1071). Such a determination must be grounded in law and fact ( *id.*). Here, the defendant's expenses exceeded his income as reported in his tax returns and testified to in court. It is interesting to note that when the parties owned the motel, defendant would give money to his wife from the cash received at the daily check in. Additionally, defendant would permit his friend, Mr. Paul, to use the tow truck to pick up calls without receiving any compensaation from him. No satisfactory explanation was made regarding defendant's business compensation for the use of the truck and how it affects his income.

For the purpose of determining child support, plaintiff earns $84,434 as a Registered Nurse Supervisor. Based on the credible evidence the court determines that defendant earns more money than which he testified. However, the court will not consider the rental income as part of the imputed amount, since the marital residence has been directed to be sold as part of equitable distribution and is presently being used for partial payment of the mortgage. Based upon defendant's earning potential and other evidence, the court imputes income in the amount of

13    40

$50,000 annually to defendant for the purpose of determining child support. The combined parental income after deduction of FICA is $124,150. The presumptive child support for two children at 25% is $31,037.50.

Pursuant to a previous stipulation, custody of the two youngest children was awarded to the plaintiff. Therefore, pursuant to the Child Support Standards Act, defendant is directed to pay prospectively $222.00 per week until Bani reaches the age of 21 years, or is sooner emancipated. Thereafter, child support shall be $150.96 per week until Simaran reaches the age of 21 years, or is sooner emancipated. Defendant has made no payments pursuant to the *pendente lite* order. These future payments shall be made through the Child Support Collection Unit of the Family Court. These payments are retroactive to the commencement of the action.

Finally, plaintiff is responsible for 63% and defendant is responsible for 37% of child care expenses and unreimbursed medical expenses.

## Arrears

Plaintiff left the marital residence with Bani and Simarin in September 2006. Sujit remained in the marital residence with the defendant. Plaintiff is entitled to arrears for child support for the two youngest children based upon the award of custody. However, it would be inequitable not to grant defendant a credit for the period of time Sujit resided with him, from September 2006 until his 21st birthday.

As a result, plaintiff is entitled to arrears based upon custody of the two children. The arrears are calculated at 25% from the commencement of the action, June 16, 2006, through the end of June, 2010. The amount of arrears, based upon defendant's income and due to plaintiff is $46,619.00. Additionally, a credit is due plaintiff in the amount of $3,053.00 for defendant's

14

41

proportionate share of medical insurance expenses expended by plaintiff. This totals $49,672 due to plaintiff. However, a credit is awarded to defendant based upon 17% from the end of September 2006 until June 27, 2010, the date Sujit turned 21. The amount of credit due to defendant is $49,530 based upon plaintiff's present salary. As a result, plaintiff is entitled to a credit of $$142.00 which shall be paid to plaintiff from defendant's share of the net proceeds at the time the marital residence is sold.

### Counsel Fees

An award of counsel fees pursuant to Domestic Relations Law § 237(a) is a matter within the sound discretion of the trial court, and the issue "is controlled by the equities and circumstances of each particular case" ( *Morrissey v. Morrissey*, 259 AD2d 472,473; *see also Timpone v. Timpone*, 28 AD3d 646; *Walker v. Walker*, 255 AD3d 375, 376). In determining whether to award fees, the court should "review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (*DeCabrera v. Cabrera-Rosete*, 70 NY2d 879; *see also Ciampa v. Ciampa*, 47 AD3d 745). The court may also consider whether either party has engaged in conduct or taken positions resulting in a delay of the proceedings or unnecessary litigation (*see Ciampa v. Ciampa*, 47 AD3d at 748; *Timpone v. Timpone*, 28 AD3d at 646; *Morrissey v. Morrissey*, 259 AD2d at 473; *Walker v. Walker*, 255 AD2d 375, 376).

Other factors include the nature and extent of services rendered and the complexity of issues involved (*see, Farrell v. Cleary-Farrell*, 306 AD2d 597 [3d Dept 2003] ), the ability of each spouse to pay their own counsel fees (*see, Sclafani v. Sclafani*, 178 AD2d 830 [3d Dept 1992] ), whether an equitable distribution award was made (*see, Zema v. Zema*, 17 AD3d 360 [2d

Dept 2005] ), and the earning power and assets of the parties (*see, Kavanakudiyil v.*

*Kavanakudiyil,* 203 AD2d 250 [2d Dept 1994]; S.P. v F.O., 20 Misc3d 1104[A]).

The court finds that each litigant shall be responsible for paying their own legal fees. The amount of gifts, loans and unusual financial transactions testified to by the plaintiff and the defendant convinces the court that each spouse has the ability to pay their own counsel fees.

This constitutes the decision and order of the court. Submit findings of fact, conclusions of law and a judgment on notice.

Dated: Mineola, New York
July 1, 2010

ENTER:

_____
HON. JEFFREY S. BROWN
J. S. C.

TO:
Plaintiff's Attorney
Ira Bierman, Esq.
485 Underhill Blvd.
Syosset, NY  11791

Defendant's Attorney
John Lawrence, Esq.
190 Willis Avenue
Mineola, NY  11501

ENTERED

JUL 06 2010

NASSAU COUNTY
COUNTY CLERK'S OFFICE

16      43

EXHIBIT 4   44



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 09-29-2014          Record and Return To:
Recorded Time:  2:49:25 p

    Liber Book:
    Pages From:
         To:

       Control
       Number:  1652
        Ref #: 2006201751
    Doc Type: CM3  MATRIMONIAL ORDER

Plnt: BADWAL, RAMANDEEP
Dfnd: BADWAL, AVTAR SINGH

                              Taxes Total        .00
                           Recording Totals      .00
AAJ001                        Total Payment       .00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                  MAUREEN O'CONNELL
                  COUNTY CLERK

2014092901652

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

RAMANDEEP BADWAL,

                           **Plaintiff,**

        **-against-**

AVTAR S. BADWAL,

                           **Defendant.**

**TRIAL/IAS PART 25**
**Index No.: 201751/06**
**Motion Seq.#'s: 005 & 006**

**DECISION AND**
**ORDER**

**PRESENT: HON. MARGARET C. REILLY, J.S.C.**

The following papers having been read on the parties' respective motions:

Plaintiff's Order to Show Cause (Seq.# 005) to Punish Defendant
for Contempt and Emergency Relief. Affidavit of Plaintiff in
Support of Order to Show Cause for Contempt and Other Relief,
Affirmation in Support of Order to Show Cause for Contempt and
Other Relief & Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Defendant's Notice of Cross-Motion (Seq.# 006), Affidavit in Support
of Plaintiff's Cross-Motion seeking a Stay of the Action and in
Opposition to Plaintiff's Motion Seeking to Hold Defendant in
Contempt & Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Plaintiff's Affirmation in Opposition to Defendant's Cross-Motion &
Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Upon the foregoing papers, it is ordered that the parties' respective motions are decided as follows:

The plaintiff moves (motion sequence #005) for an order (a) punishing the defendant for contempt of Court, pursuant to DRL §245 and Judiciary Law §753, as a result of the defendant's failure to abide by that part of the Judgment of Divorce which directed that the former marital home, be placed on the market for sale within thirty (30) days after the Court's Decision is served on the defendant's counsel, and further directed the defendant to continue to pay the carrying charges for the marital home, including the mortgage, until said property

4 6

was sold; (b) an order appointing the plaintiff as agent for the defendant allowing the plaintiff to list the former marital residence and to execute a brokerage agreement, sales contracts, and to execute a deed conveying the property, on behalf of the parties hereto, and all documents required to transfer said property; (c) directing the defendant be removed from the former marital residence in order to facilitate the sale; (d) awarding the plaintiff counsel fees; and (e) awarding the plaintiff a money judgment for child support arrears.

The defendant cross moves (motion sequence #006) for an order (1) denying plaintiff's application in its entirety; and (2) issuing defendant a stay with respect to this matter, including but not limited to enforcement of the April 10, 2013, Judgment incorporating the Decision.

## LEGAL ANALYSIS AND ORDER OF THE COURT
### PLAINTIFF'S ORDER TO SHOW CAUSE
#### MOTION SEQUENCE #005

(1)    The branch of the plaintiff's order to show cause for an order adjudging the defendant guilty of contempt for his misconduct in failing to obey the Order of the Honorable Jeffrey S. Brown, in the Decision of the Supreme Court, dated December 22, 2011, read in relevant part as follows:

> "... As a result, the court directs the sale of the marital residence with the net proceeds being divided equally. The litigants shall contact broker and comparables shall be used to set a listing price. The house shall be placed on the market within 30 days after service of a copy of this order upon the defendant's counsel with notice of entry. Defendant shall use the rental income to pay the mortgage."

On November 13, 2010, a copy of the Decision was mailed to the defendant with Notice of Entry. A Judgment of Divorce was entered on April 10, 2013.

The plaintiff asserts that, although it has been almost four years since the Court's Decision, the defendant has refused to cooperate with the sale of the former marital residence. The defendant has also failed to pay for the mortgage, causing the property to fall

2

47

into foreclosure. The defendant has appealed the Judgment of Divorce, but sought no stay.

The defendant claims that the plaintiff's motion is procedurally defective. The defendant further posits that the plaintiff's motion should be stayed because of the Appeal currently pending on the issues of equitable distribution. In opposition, the plaintiff asserts that notice was given pursuant to the Court rules.

Contempt is a drastic remedy which should not be granted absent a clear right to the relief (*see Pinto v. Pinto*, 120 AD2d 337[1st Dept. 1986]; *Usina Costa Pinto SA* v. *Sanco Sav Company Limited*, 174 AD2d 487 [1st Dept.1991]). In order to prevail on a motion for contempt based upon a violation of a Court order, the movant must demonstrate that the party charged violated a clear and unequivocal Court mandate, thereby prejudicing a right of another party to the litigation (*see* DRL §245, *Judiciary Law* §753 (A)(3); *McCain v. Dinkins*, 84 NY2d 216 [1994]; *Goldsmith v Goldsmith*, 261 AD2d 576 [2d Dept 1999]; *Stempler v. Stempler*, 200 AD2d 733 [2d Dept 1994]; *Anonymous v Anonymous*, 17 Misc3d 1116(A) [Supreme Court, Nassau County 2007]). The movant must meet this burden by clear and convincing evidence (*see Bulow v. Bulow*, 121 AD2d 423 [2d Dept. 1986]). There also must be a finding by the Court that the conduct complained of was calculated to or actually did defeat, impair or prejudice the rights or remedies of a party to a civil proceeding (*see Barkan v. Barkan*, 271 AD2d 466 [2d Dept. 2000], *Farkas v. Farkas*, 209 AD2d 316 [1st Dept. 1994]).

Furthermore, an adjudication for contempt may only be had where it appears "presumptively, to the satisfaction of the Court," that payment cannot be enforced pursuant to DRL §243 (sequestration) DRL §244 (money judgment), CPLR §5241 (income execution) or CPLR §5242 (income deduction) (*see* DRL §245; *Covello v. Covello* 68 AD2d 818, *Higbie v. Higbie*, 260 AD2d 603 [2d Dept 1999]). When a movant has established the knowing violation of a clear mandate which impaired the movant's rights or remedies, and the movant demonstrates that resort to other means of enforcement would be futile, the burden then shifts to the defaulting party to demonstrate that the default was not willful by

49

the presentation of evidence that he or she was financially unable to make the required payments under the order (*see Matter of Powers v. Powers*, 86 NY2d 63 [1995]; *Bickwid v. Deutsch*, 87 NY2d 862 [1995]).

In the instant case, the plaintiff has established (1) that a clear and unequivocal Court mandate was made by this Court, which required the sale of the marital residence; (2) that the defendant violated the clear mandate of the Court; and (3) that his violation resulted in prejudice to the plaintiff. The plaintiff did not establish that other means of enforcement would be futile. The Court can direct the appointment of a receiver to sell the marital residence and shall do so under separate order.

In view of the plaintiff's application for an order adjudging the defendant in contempt is **DENIED**.

(2) The branch of the plaintiff's motion for an order appointing the plaintiff as receiver is **DENIED**. The Court shall appoint a neutral party as receiver and payment to be made by the parties.

(3) The branch of the plaintiff's motion for an order directing the defendant to be removed from the former marital residence is **DENIED**, at this time.

(4) The branch of the plaintiff's motion for an order granting an award of attorneys fees, pursuant to DRL §§237(c) and 238, is **DENIED**, without prejudice to renew. The plaintiffs's counsel failed to attached a Statement of Client Rights.

(5) The branch of the plaintiff's motion for an order awarding the plaintiff a money judgment for arrears in child support is determined as follows:

The Honorable Jeffrey S. Brown, Decision After Trial, dated December 22, 2011, and the Judgment of Divorce set forth, in pertinent part, with regard to child support, as follows:

> "... Therefore, pursuant to the Child Support Standards Act, defendant is directed to pay prospectively $220.00 per week until Bani reaches 21 years, or is sooner emancipated. Thereafter child support shall be $150.96 per week until Simaran reaches the age of 21 years, or is sooner emancipated."

The plaintiff claims that the defendant has not made any child support payments from June 16, 2006, to the date of this affidavit. The plaintiff claims that the amount of arrears as of April 11, 2014, is $64,800.00 dollars. The defendant does not refute that he failed to pay as ordered, nor does he refute the amount owed. The defendant seeks a stay, rather than offering a defense.

In view of the foregoing, the plaintiff is awarded a money judgment in the amount of $64,800.00 dollars. Submit judgment, on notice.

**DEFENDANT'S CROSS MOTION**
**MOTION SEQ.# 006**

The defendant's cross motion is **DENIED**, in its entirety.

Any further relief requested by the parties, not specifically addressed herein, is **DENIED**.

This constitutes the Decision and Order of this Court.

Dated:   September 17, 2014
           Mineola, New York

E N T E R:

_____
HON. MARGARET C. REILLY, J.S.C.

**ENTERED**

SEP 2 6 2014

NASSAU COUNTY
COUNTY CLERK'S OFFICE

To:   Ira Bierman, Esq.
     Attorney for Plaintiff
     390 North Broadway, Suite 130
     Jericho, New York 11753

     Avtar S. Badwal
     Defendant, Unrepresented
     110-30 62nd Drive
     Forest Hills, New York 11375

5.      50

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

RAMANDEEP BADWAL,

Plaintiff,

IAS PART 25
Index No.: 201751/06

-against-

ORDER APPOINTING
RECEIVER

AVTAR S. BADWAL,

Defendant.

PRESENT: HON. MARGARET C. REILLY, J.S.C.

Upon all of the prior proceedings in this action/proceeding, it is

**ORDERED,** that, Michael A. Montesano, Esq., P.C., Fiduciary No. 624564, located at 58 School Street, Suite 201, Glen Cove, New York 11542, telephone (516) 759-8469, is hereby appointed Receiver to sell the real property commonly known as 110-30 62nd Drive, Forest Hills, New York (subject to any purchase of one party's interest in the property by the other); and it is further

**ORDERED,** that the Receiver is authorized, if necessary, to retain contractors to clean, maintain, and repair the premises as may be necessary to sell the property in the most expeditious fashion, for the best possible price; and it is further

**ORDERED,** that any costs or expenses of the receivership, unless otherwise stated herein, shall be paid equally by the parties, from the sale proceeds; and it is further,

**ORDERED,** that the Receiver is authorized to apply to the Court, by letter application, with a suggested request for a broker, from the Court's listing of brokers, to market the premises; and it is further,

**ORDERED,** that said Receiver is not authorized to hire counsel, an accountant, auctioneer, appraiser, property manager or real estate broker (secondary appointees) without an Order of this Court; and it is further,

5P

ORDERED, that the parties are to provide the Receiver with keys to the above listed property within ten (10) days of the date of this Order; and it is further

ORDERED, that the Receiver will post a bond in the amount of $25,000.00 dollars, in accordance with the requirement of CPLR §6403, within thirty (30) days of the date of this Order; and it is further

ORDERED, that the Receiver is to be paid a five percent (5%) commission of the Gross Sales Price collected on said dwelling, or as otherwise provided for in CPLR §8004, which sum shall be deducted equally from both parties' share of the net proceeds; and it is further

ORDERED, that the Receiver appointed herein shall continue her duties as such until the Receivership is terminated by Court Order.

Dated:   September 19, 2014
         Mineola, New York

E N T E R:

_____
HON. MARGARET C. REILLY, J.S.C.

**ENTERED**

SEP 26 2014

NASSAU COUNTY
COUNTY CLERK'S OFFICE

To:   Ira Bierman, Esq.
      Attorney for Plaintiff
      390 North Broadway, Suite 130
      Jericho, New York 11753

      Avtar S. Badwal
      Defendant, Unrepresented
      110-30 62nd Drive
      Forest Hills, New York 11375

      Michael A. Montesano, Esq., P.C.
      58 School Street, Suite 201
      Glen Cove, New York 11542

52

# EXHIBIT 5

CLOSING STATEMENT

SELLER:      AVTAR S. BADWAL AND RAMANDEEP BADWAL

PURCHASER:   PRAVIN M. PATEL AND ARUNA P. PATEL

REAL ESTATE: 1407 NW 3RD ST., ABILENE, KS (DIAMOND MOTEL)

CLOSING DATE: MARCH 22, 2006

SELLER STATEMENT -

CONTRACT PRICE                                              $355,000.00

EXPENSES-
1/2 Title Insurance premium              $    487.50
1/2 Closing fee                               100.00
Attorney fees to Thompson Law Office          200.00
Record Power of Attorney                       16.00
2nd 1/2 2005 RE Taxes                       3,330.56
RE Tax prorata to 3-22-06                   1,459.97

   TOTAL EXPENSES

LESS - Funds held in escrow by Title Company
       in accordance with Escrow Agreement
       dated March 21, 2006.                              (60,000.00

DUE TO SELLER AT CLOSING


THE PARTIES  UNDERSTAND AND  AGREE  THAT PERSONAL  PROPERTY,  PERSONA
PROPERTY  TAXES,  AND  TRANSFER  OF  INTEREST IN  ROAD  SIGNS  ARE  NO
ADDRESSED IN THIS CLOSING.



AVTAR S. BADWAL                          RAMANDEEP BADWAL
                                         BY: AVTAR S. BADWAL, HER
                                             LAWFUL ATTORNEY-IN-FACT


WYATT LAND TITLE SERVICES, INC.
by: RAY WYATT, PRESIDENT                        54

SUPREME COURT NASSAU COU
Ex.
Def.
Pet.                    EXHIBIT G
Res.
                       APR 6 2010

CATHERINE TURBEF

EXHIBIT   6

55

1    Q   What was the reason why you put it on the market for

2  sale?

3    A   I'm not able to afford any mortgage now.

4    Q   How much is the mortgage payments for that house?

5    A   $4,500.

6    Q   Per month?

*April 7 2009*

7    A   Yes, sir.

8          THE COURT:  Has it always been that high?

9          THE WITNESS:   Yes.

10    Q   Was that the sum you were paying on the mortgage, the

11  monthly mortgage payment since the time you bought that house?

12    A   How did I --

13    Q   No.  Was that the sum you have been paying since --

14    A   Yes.

15    Q   You are asking that the Court direct the sale of the

16  marital residence in Forest Hills?

17          MR. HARRIS:  Objection.

18    A   Yes.

19          THE COURT:  I'll permit that.

20    Q   You are also asking the Court to award you child

21  support, correct?

22    A   Yes.

23          MR. BIERMAN:   I have no further questions, your

24  Honor.

25          THE COURT:  All right.  I have another case to

CT

AVTAR SINGH BADWAL
RAJANDEEP BADWAL

## YOUR MONEY IN THE BANK ACTIVITY FROM JUNE 10 THROUGH JULY 9, 1997

**CHECKING**
**23012135**

You began this statement period with a BALANCE of **89,223**

You increased funds totaling **900**

DEPOSITS
| | | |
|---|---|---|
| 6/17 Deposit | | 250.00 |
| | CBC 02792 1275 MADISON AVENUE, NY, NY | |
| 6/18 Deposit | | 250.00 |
| | CBC 01091 1 PARK AVENUE, NY, NY | |
| 6/19 Deposit | | 400.00 |
| | CBC 01092 1 PARK AVENUE, NY, NY | |

You decreased funds totaling **34,122.**

TRANSFERS OUT/PAYMENTS/PURCHASES
| | | | |
|---|---|---|---|
| 6/16 PRUDENTIAL INS | INS PREM | 0717997220BNYL5 | 99.20 |
| 6/27 NJINSURANCE | INS. PREM | 0130378484 | 11.26 |

CHECKS PAID

| CHECK | DATE | AMOUNT | CHECK | DATE | AMOUNT | CHECK | DATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 336 | 6/10 | 54.00 | 344 | 6/23 | 25,500.00 | 351 | 6/23 | 116.00 |
| * 338 | 6/10 | 851.00 | 345 | 6/16 | 440.00 | 352 | 6/23 | 400.00 |
| 339 | 6/11 | 1,000.00 | 346 | 6/12 | 200.00 | 353 | 6/30 | 63.40 |
| 340 | 6/11 | 236.00 | 347 | 6/19 | 168.00 | 354 | 7/09 | 1,913.20 |
| 341 | 6/27 | 25.00 | 348 | 6/26 | 60.00 | 355 | 7/07 | 1,912.00 |
| 342 | 6/12 | 274.00 | 349 | 6/24 | 155.00 | 356 | 7/09 | 37.28 |
| 343 | 6/13 | 250.00 | 350 | 6/24 | 500.00 | *12135 | 6/13 | 76.99 |

* Gap in check numbers

You ended this statement period with a BALANCE of **56,001.**

Running Balances

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 6/10 | | 5/17 | 86,512.27 | 6/26 | 59,953.27 |
| 6/11 | 87,102.57 | 6/18 | 86,262.27 | 6/27 | 59,927.01 |
| 6/12 | 86,728.57 | 6/19 | 86,494.27 | 6/30 | 59,863.61 |
| 6/13 | 86,301.97 | 6/23 | 60,478.27 | 7/07 | 57,951.61 |
| 6/16 | 65,762.27 | 6/24 | 60,023.27 | 7/09 | 56,001.13 |

**Service Charges:** You met the requirements to avoid checking account charges during the period covered by this statement.

**Good Customer Profile:** Customers who maintain a good banking record over an extended period of time can withdraw funds from their check deposits without waiting for the checks to clear. Based on your account history, you can withdraw up to $99.00 in cash the next business day. This is in addition to funds that would normally be available for withdrawal.

## BORROWING AND LOANS ACTIVITY FROM JUNE 10 THROUGH JULY 9, 1997

**CHECKING PLUS**
**23012135**
Your Credit Line is $2,500.00. Of this amount, $2,500.00 is available to you. Your repayment period is 60 months.

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON YOUR: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | 718-427-3999 | Citibank, N.A. |
| Checking Plus | (For Speech and Hearing | PO Box 5878 |
| | Impaired Customers Only | New York, NY 10185-5878 |
| | TDD: 800-945-0258) | |

56

EXHIBIT   7

57

LOAN HISTORY STATEMENT

SURNAME ID: BADWAL          POLICY NO: 71-799-722          REQUESTED BY: HGI23          SUBMITTED BY:          03/25/2009

| TYPE OF ACTIVITY | EFFECTIVE DATE OF ACTIVITY | AMOUNT BORROWED (OR REVERSED) | INTEREST PAID | PAYMENTS ON PRINCIPAL | UNPAID INTEREST ADDED TO PRINCIPAL | AFTER LOAN ACTIVITY: TOTAL PRINCIPAL | ANNIVERSARY INTEREST |
|---|---|---|---|---|---|---|---|
| LOAN REQUESTED OR USED | 09/29/2008 | $ 28,989.21 | | | | $ 28,989.21 | $ 1,853.58 |

58

pp 215/4 2010

1    Q    At this period of time did you own an insurance policy

2    with Prudential?

3    A    Yes, I do.

4    Q    Did anything happen with respect to that policy?

5    A    When money was not enough to pay my bills, I borrowed

6    another $29,000 on Prudential Insurance Company.

7    Q    Could you tell us when that was?

8    A    2008.

9    Q    And what if anything did you use that money for?

10   A    Paying my bills.

11   Q    And now when you say that, could you be a little more

12   specific and tell us what you mean by paying bills.

13   A    Paying utilities, mortgage, bills.

14   Q    And during that time did Mrs. Badwal make any

15   contribution toward these bills?

16   A    No.

17   Q    Did there come a time when you started a business

18   after the divorce action was started?

19   A    I started a tow company in September -- in

20   December 17, 2006.

21   Q    2006?

22   A    Yes.

23   Q    All right.

24   A    And I bought the truck for the tow company in August

25   2006.

59

Prudential Loan recalled to
pay bills. utilities, mortgage

CT

# EXHIBIT 8

# CHASE O

**Chase Premier Platinum**

June 20 - July 20, 2006
Page 1 of 3

832-008832-8013-008832-
0000575T RE1T23 06202 - RETAIL NE 8013 NNNNN

RAMANDEEP BADWAL
11030 62ND DR
FOREST HILLS            NY  11375

|..|.|...|..|.|.|.|...|.|.|...|..|.|.|..|.||.....|.|..|..||...||..||.|

**Customer Service**
1-800-CHASETD
1-800-216-2700
Hearing impaired call 1-800-CHASETD
Access Accounts, Pay Bills, Transfer Money
Fast, Easy, Free with Chase Online℠
www.chase.com/bank

Primary Account Number:   832-0062124-65
Number of Checks Enclosed: 0

**OVERVIEW**

**Deposit Accounts: JPMorgan Chase Bank, N.A. ("Bank")**

| | Account Number | Opening Balance | Ending Balance |
|---|---|---|---|
| Checking and Savings | | | |
| Chase Premier Platinum Ckg Int | 832-0062124-65 | $1,269.44 | $2,538.93 |
| Chase Premier Platinum Ckg Int | 832-0062124-01 | $206,825.08 | $147,509.79 |
| Chase Premier Platinum Sav | | $209,094.52 | $150,048.72 |
| **Total** | | | |

## THIS ENDS YOUR STATEMENT OVERVIEW

**Chase Premier Platinum Ckg Int**   Account # 832-0062124-65

RAMANDEEP BADWAL

**ACCOUNT OVERVIEW**

| | | |
|---|---|---|
| Average Balance | | $2,051.32 |
| Interest Earned for 31 Day(s) | | $1.69 |
| Annual Percentage Yield Earned | | 1.01% |
| Interest Credited in 2006 | | $5.13 |
| Interest Rate(s) | | 06/20 to 07/20 at 1.00% |

**Summary**

| | |
|---|---|
| Opening Balance | $1,269.44 |
| Additions | $1,669.49 |
| Deductions | $400.00 |
| **Ending Balance** | $2,538.93 |

**Activity**

| Date | Description | Additions | Deductions | Balance |
|---|---|---|---|---|
| 06/20 | Opening Balance | | | $1,269.44 |
| 06/20 | Deposit | $1,667.80 | | $2,937.24 |
| 07/05 | ATM Withdrawal Card # **** 2840 | | $400.00 | $2,537.24 |
| 07/06 | Serial# 001880, 184-01 Hillside Av, Jamaica Est's, NY | | | $2,538.93 |
| 07/19 | Interest Credit | $1.69 | | $2,538.93 |
| 07/20 | Ending Balance | | | $2,538.93 |

**Chase Premier Platinum Sav**   Account # 0062124-01

Average Balance

20140024710130575701
RAMANDEEP BADWAL
R/P NDEEP BADWAL
ITF/SIMR    BANI BADWAL
e8195/557:744

61

62